Richardson, Cb. J.,
delivered tbe opinion of tbe court:
Tbe court bas drawn tbe findings concisely, to present all tbe facts upon wbicb questions of law arise, none of wbicb are 'controverted, omitting a great mass of details wbicb bave been examined and wbicb, if fully set out, would only obscure tbe real issues.
Tliere were four mail contracts originally made with as many different contractors, under all of wbicb tbe claimant became a subcontractor for tbe whole service. Each contract provided, in accordance with tbe statute, that “in case of decrease, curtailment, or discontinuance of service” there should be paid, “as a full indemnity to said contractor, one month’s extra pay on tbe amount of service dispensed with.”
Tbe service undertaken by tbe claimant was decreased, 'and be sued for one month’s extra pay.
Three points of law are involved, and they bave been thoroughly and ably argued on both sides.
Tbe first question is substantially tbe same as that decided on demurrer (ante p. 52), differing only as to one of tbe four contracts; tbe defendants contending that there is no privity of contract between tbe defendants and tbe subcontractor. Tbe petition demurred to alleged that by tbe terms of each of tbe agreements of subletting tbe claimant was to receive tbe ■“entire compensation stipulated tobe paid on said contract between tbe United States” and tbe original contractor. Tbe defendants accepted tbe subcontractor and always thereafter made payments to him. This established contract relations between tbe claimant and tbe defendants.
It was urged that tbe privity of contract extended only to tbe amounts due for services actually performed, and not to *414 tbe one month’s extra pay on account of service dispensed with and not performed, on tbe ground, as claimed, that tbe month’s extra pay was in tbe nature of liquidated damages for breach of contract on tbe part of tbe defendants. We held that tbe one month’s extra pay for services dispensed with was not a penalty for breach of contract, but was as much a part of tbe original agreement of payment as was that for services actually performed, and we overruled tbe demurrer.
Tbe learned attorney for tbg defendants, no longer contending against tbe ruling of the court on tbe demurrer, now urges that it does not apply to the facts appearing in relation to tbe Giddings contract as set out in finding n.
Tbe agreement of sublettiug, after providing that tbe claimant should perform aE tbe service required by tbe contract, concludes as foEows:
“In consideration of tbe above undertakings, covenants, and agreements of tbe said Monroe Salisbury, tbe said W. W. Gid-dings herewith agrees to pay, and by these presents bath agreed to pay, to tbe said Monroe Salisbury tbe full amount of mail pay that shall from time to time become due to him tbe said W. W. Giddings, up to tbe thirtieth day of June, A. D. 1882. This contract to bind tbe heirs and legal representatives of tbe parties thereto.”
Tbe contention on tbe part of tbe defendants is that this subcontract does not provide for payment to tbe claimant of tbe “ entire compensation stipulated to be paid in said contract,” but only tbe “ full amount of mail pay that shall from time to time become due him,. tbe said W. W. Giddings,” and that “mail pay” moans pay for actual service performed. This, we think, is too narrow a view to be taken of tbe contract of subletting. Tbe intention of tbe parties, as gathered from an instrument and attendant circumstances, must govern its interpretation.
Tbe subcontractor assumed all tbe obligations of tbe contract, was put to all tbe expense of providing horses and carriages, and it would be unreasonable to bold tbe intention of tbe parties to have been that be should not receive tbe one month’s extra, pay for deprivation of tbe earnings which be would have bad for tbe use of so much of bis plant as be would have employed in performing tbe reduced service, and that aE such extra pay should go to tbe original contractor, who owned none *415 of tbe plant for tbe loss of use of which.the extra amount was agreed to be paid. We can not interpret tbe contract in that way, but bold that tbe claimant is entitled to recover tbe entire compensation.
Tbe second point arises upon tbe facts found as to tbe White contract, set out in finding rv. Tbe order of tbe Postmaster-General for decreased service was made April 13,1881, to take effect on tbe first day. of May following. Tbe defendants set up tbe statute of limitation, and tbe question is wben tbe cause of action accrued.
On tbe part of tbe defendants tbe contention is that it accrued on tbe date of tbe order, April 13,1881, or wben tbe reduction began, May 1, 1881; in either case more than six years before tbe claimant’s petition was filed.
In our opinion it did not accrue until tbe time came for payment of any balance found due upon a settlement' of tbe claimant’s account under tbe contract for tbe quarter in which tbe decreased service took effect.
Tbe Auditor is required by law to close tbe accounts of tbe Post-Office Department quarterly (It. S., § 277, third par.). Tbe quarters end with March, June, September, and December. Tbe regulations provide that payment shall be made in February, May, August, and November, and mail contracts contain tbe same provision. This gives tbe Department one month in which to ascertain and determine from tbe report of postmasters on tbe route during tbe whole quarter tbe amount of penalties and forfeitures to be deducted for delinquencies, neglect, or malpractice (B. S., § 3962). Wben accounts are thus stated, or might be stated, by tbe Auditor, then, and not till then, do causes of action accrue to recover any balances found due or claimed. Under this contract tbe decreased service belonged to tbe quarter ending June 30,1881, and tbe balance of account for tbat quarter became payable in August, 1881, which was within six years of tbe time of filing tbe petition.
We can not bold tbat tbe claimant could have maintained an action for allowance on account of decreased service any earlier than be could have maintained one for tbe same service actually performed. They both belong to tbe same quarter.
Tbe third objection raised by defendants is tbat tbe Postmaster-General was not authorized by statute to increase ex *416 pedition at tbe same time he required additional service; and this objection applies to all the contracts alike.
This is the provision on the subject in the Revised Statutes:
“Sec. 3961.-No extra allowance shall be made for any increase of expedition in carrying the mail unless thereby the employment of additional stock and carriers is made necessary, and in such case the additional compensation shall bear no greater proportion to the additional stock and carriers necessarily employéd than the compensation in the original contract bears to the stock and carriers necessarily employed in its execution.”
It is not necessary to determine whether or not the Postmaster-General exceeded his authority. The claimant performed the services according to contract and is entitled to pay therein agreed upon, even if the Postmaster-General erred in his construction of the statute. He is not in such case to be held responsible for a mistake in the construction of a doubtful provision of law made .by the Postmaster-General in the administration of the duties of his office.
On the whole case the claimant is entitled to recover—
Under tlie Salisbury contract..... $526.15
Under tlie Griddings contract.... 799. 61
Under tlie Dorsey contract.. 1,112.84
Under the White contract... 2,637.15
In all. 5,075.75
Judgment will be entered for the latter sum.